IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-691 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | | **Confidential Version Filed: December 29, 2022** |
| JAZZ PHARMACEUTICALS, INC. and | ) | **Public Version Filed: January 5, 2023** |
| JAZZ PHARMACEUTICALS IRELAND | ) | |
| LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 21-1138 (GBW) |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| JAZZ PHARMACEUTICALS, INC. and | ) | |
| JAZZ PHARMACEUTICALS IRELAND | ) | |
| LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 21-1594 (GBW) |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS
FROM JEREMY A. TIGAN REGARDING OPPOSITION TO
AVADEL'S DECEMBER 27, 2022 DISCOVERY DISPUTE LETTER**

Dear Judge Williams:

On October 21, 2022, Avadel deposed Clark Allphin, Jazz's Rule 30(b)(6) witness on certain topics, for seven hours on the record. D.I. 275, Ex. D ("Tr.") at 290-293. Mr. Allphin was neither evasive nor unprepared; he testified for nearly 300 pages about subject matter within the noticed topics, as well as subjects that fell outside those topics. Apparently unsatisfied with the amount of time permitted for deposition under the Federal Rules, Avadel now spins a narrative two months later that, not only was Mr. Allphin unprepared to testify, but also that his "unpreparedness is part of a pattern" of Jazz's witnesses (non-Rule 30(b)(6) included) and unrelated, third-parties. Avadel's request for additional deposition time lacks merit and should be denied.

## I.     Factual Background

Avadel served thirty-two Rule 30(b)(6) topics on Jazz. D.I. 275, Ex. A. The topics encompassed irrelevant and disproportionate subjects so Jazz responded by offering: (1) to provide a subset of the requested testimony for certain topics; and (2) to meet and confer for other topics. Ex. 1. The parties ultimately agreed on the scope of testimony (Ex. 2), which is set forth below, but noticeably absent from Avadel's motion. Jazz designated Mr. Allphin to provide testimony for Topic Nos. 3, 5, 8-13, and 17-21. *See* D.I. 275, Ex. B. For Topic Nos. 9-13, Mr. Allphin was designated for events before February 2016. *See* D.I. 275, Ex. B; *see also* Tr. at 11 (discussing role change around 2016). On October 21, Mr. Allphin testified for 7 hours. On October 28, Avadel asserted that "Mr. Allphin was not adequately prepared." Ex. 3. The parties met-and-conferred on November 3. D.I. 268. There was no further meet and confer after November 3, and Avadel did not raise any dispute with the Court until December 19. *Id.*

## II.    Argument

### A.     Mr. Allphin was prepared to testify about each topic

Avadel argues that Mr. Allphin "was not prepared" and "could articulate essentially nothing that he did to prepare to testify." D.I. 275 at 1-2. Not so. Mr. Allphin testified that he spent 2.5 days reviewing documents and preparing. Tr. at 13-14, 34, 41, 48. That preparation is demonstrated in Mr. Allphin's testimony. Furthermore, Avadel asked Mr. Allphin mostly about events from 6 to 13 years ago, and Avadel failed to establish that there is anyone reasonably available to Jazz that Mr. Allphin could have consulted in his preparation. Mr. Allphin is an inventor on Jazz's patents, and the only person Avadel implies Mr. Allphin should have consulted is his co-inventor (D.I. 275 at 2), who unfortunately passed away long ago.

**Topic No. 3**: Jazz agreed to provide testimony on three declarations that Mr. Allphin submitted to the Patent Office. Ex. 1 at 6. Mr. Allphin testified that he reviewed the declarations during his preparation (Tr. at 13-15), and provided substantive answers to nearly every question on them (*id.* at 37-40, 179-198, 202-227). The few instances where Mr. Allphin did not recall certain information from memory—████████████████████—he testified that if he were provided certain documents, he could provide that information to counsel. *Id.* at 224-27. Jazz also specifically identified these documents to Avadel as containing "information underlying the declarations submitted to the United States Patent Office during

Honorable Gregory B. Williams
December 29, 2022

prosecution of the patents-in-suit." Ex. 4.  And indeed, when finally provided that information at the very end of his deposition, Mr. Allphin was able to answer the questions he could not recall from memory.  Tr. at 286-90; *see also, e.g.*, *Risinger v. SOC, LLC*, 306 F.R.D. 655, 663 (D. Nev. 2015) ("Rule 30(b)(6) is not designed to be a memory contest.").  Notably, Avadel fails to show an example of any question that was not answered for this topic.

**Topic No. 5**:  Jazz agreed to provide testimony on the facts underlying the development of the subject matter set forth in the asserted claims and the individuals meaningfully involved in that work.  Ex. 1 at 8; Ex. 2.  Mr. Allphin is the inventor and testified that his knowledge was based upon his own recollection.  Tr. at 15-16.  Mr. Allphin provided substantive testimony within the scope of the topic.  *See, e.g.*, Tr. at 37-40, 94-99, 127-131, 134-139, 274-276, 279-282.  Indeed, Avadel does not even attempt to demonstrate how Mr. Allphin failed to answer questions within this topic.

**Topic No. 8**:  Jazz agreed to provide testimony concerning its decision to develop a once-nightly sodium oxybate product and the basis for that decision.  Ex. 2.  Mr. Allphin testified when Jazz started the project, why Jazz started the project, and how the goals of the project developed over time.  Tr. 17-23, 68-69.  Again, Avadel provides no support for its complaint.

**Topic Nos. 9 and 11-13**: For Mr. Allphin, these topics concern Jazz's efforts "through February 2016, to develop a once-nightly oxybate formulation."  D.I. 275 at 1-2.  Given the span of time and the volume of documents Jazz produced, Jazz agreed to provide a witness on these topics only because "Avadel agreed to identify specific experiments or documents for which it intended to seek testimony."  Ex 2.  Avadel never upheld its end of the agreement; it did not identify a single experiment or document before Mr. Allphin's deposition.  Regardless, Mr. Allphin testified at length about this subject matter.  *See, e.g.*, Tr. at 37-40, 59-81, 94-99, 127-131, 134-139, 142-150, 151-157, 232-240, 286-290.  Avadel again fails to provide a single example as to how Mr. Allphin failed to provide adequate testimony concerning these topics.

**Topic No. 10**:  Jazz agreed to provide testimony regarding its decision-making process with respect to seeking regulatory approval for any once-nightly sodium oxybate formulations.  Ex. 2.  Avadel argues that Topic No. 10 is a "stark example of Mr. Allphin's unpreparedness."  D.I. 275 at 2.  Avadel grossly mischaracterizes the record.  As set forth above, for certain topics, including No. 10, Mr. Allphin was designated to testify *only* as to facts that *predated February 2016*.  Mr. Allphin provided the company's knowledge with respect to decisions made prior to that date.  Tr. at 50-51. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mr. Allphin therefore adequately described the activities that took place during the timeframe for which he was designated to provide testimony.

**Topic No. 17**:  This topic concerns Jazz's knowledge of certain difficulties of working with sodium oxybate (e.g., its hygroscopic nature).  Jazz originally agreed to provide testimony on the facts underlying the development of the subject matter set forth in the asserted claims. Ex. 1 at 18.  As set forth above, Mr. Allphin provided such testimony.  After the parties met-and-conferred, Jazz also agreed to provide testimony on the difficulties of working with sodium oxybate, but only because "Avadel agreed to identify specific experiments or documents for which it intended to

Honorable Gregory B. Williams
December 29, 2022

seek testimony." Ex 2.  Again, Avadel never upheld its end of the agreement.  Regardless, Mr. Allphin provided substantive responses to every question concerning this topic.  Tr. at 28-33.  And again, Avadel provides no discussion as to how Mr. Allphin failed to adequately testify with respect to this topic.

**Topic Nos. 18 and 21**:  Topic 18 concerns dissolution testing of specific oxybate formulations in a specific apparatus known as "dissolution apparatus 2."  Topic 21 is broader, seeking information about "[t]esting of Jazz's once-nightly oxybate formulations" generally.  Jazz originally agreed to provide testimony on the facts underlying the development of the subject matter set forth in the asserted claims for Topic 18 (Ex. 1 at 19), which as explained above, Mr. Allphin did, and for Topic No. 21, Jazz offered to meet and confer (*id.* at 22).  Jazz then agreed to the broader scope of Topic No. 21, but only because "Avadel agreed to identify specific experiments or documents for which it intended to seek testimony." Ex 2.  Again, Avadel never upheld its end of the agreement.  Avadel's motion is silent on Topic No. 21, but, citing the transcript at 33-37, argues that Mr. Allphin was "unprepared to discuss experiments falling under" Topic No. 18.  D.I. 275 at 3.  Not so.  ███████████████████████████████████████████████████ And for the specific portions of the transcript about which Avadel complains (Tr. at 35-37), Avadel ignores that they asked him these questions in the abstract without showing Mr. Allphin any of his documents containing descriptions of his experiments that Jazz had specifically identified to Avadel months prior to Mr. Allphin's deposition.  *See* Ex. 4.  Avadel cannot complain that Mr. Allphin failed a memory test when it refused to show him the relevant documents that had been specifically identified prior to the deposition.

**Topic Nos. 19 and 20**:  These topics concern experimental work related to the subject matter of the '079 patent and the '782 patent.  Jazz originally agreed to provide testimony on the facts underlying the development of the subject matter set forth in the asserted claims (Ex. 1 at 19-21), and then also agreed to provide any broader testimony because "Avadel agreed to identify specific experiments or documents for which it intended to seek testimony" (Ex 2), which Avadel never did.  ███████████████████████████████████████████████████ Thus, Mr. Allphin provided full testimony within the scope of these topics.

      **B.**    **Avadel's purported complaints about other witnesses lack merit**

Unable to show that Mr. Allphin was unprepared, Avadel ratchets up its rhetoric, baselessly contending that Mr. Allphin's alleged unpreparedness is part of a "pattern."  As an initial matter, "no [] duty to prepare exists when a deponent testifies in his or her personal capacity."  *U.S. v. Florence*, No. 13-035, 2020 WL 5797987, at *7 n.1 (M.D. Tenn. Sept. 29, 2020).  Moreover, if Avadel had any legitimate complaint about the preparedness of Jazz's other Rule 30(b)(6) designees, it should have raised those complaints with Jazz months ago and sought relief from the Court.  Avadel never did.  Moreover, Avadel's waiting two months to raise the present dispute with the Court belies its claim that it "is seeking additional time only with Mr. Allphin" to avoid scheduling changes.  D.I. 275 at 3.  Avadel's delay and irrelevant discussion of other witnesses reveals this motion for what it truly is—another meritless attack on Jazz.

Honorable Gregory B. Williams
December 29, 2022

                                           Respectfully,

                                           */s/ Jeremy A. Tigan*

                                           Jeremy A. Tigan (#5239)

JAT/rah
Enclosures

cc:     Clerk of the Court (via hand delivery)
         All Counsel of Record (via CM/ECF and e-mail)