IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-691 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | ██████████████████ |
| | ) | █████████████ |
| Defendant. | ) | Redacted - Public Version |

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1138 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | ██████████████████ |
| | ) | █████████████ |
| Defendant. | ) | Redacted - Public Version |

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1594 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | ██████████████████ |
| | ) | █████████████ |
| Defendant. | ) | Redacted - Public Version |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF
<u>RENEWED MOTION FOR A PERMANENT INJUNCTION</u>**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS .........................................................2

III.  THE COURT SHOULD ENJOIN AVADEL FROM REQUESTING FDA APPROVAL FOR A LUMRYZ IDIOPATHIC HYPERSOMNIA INDICATION...........3

    A.  Enjoining Avadel From Requesting FDA Approval For IH Is Necessary To Prevent Currently Enjoined Infringement And Irreparable Harm To Jazz................................................................................................................4

        1.  Avadel will submit an application for an IH indication............................6

        2.  Avadel expects the FDA to approve its request for Lumryz to treat IH ...............................................................................................................8

        3.  Upon approval for IH, the Lumryz label will include the IH indication, resulting in Avadel marketing and selling Lumryz for IH .................................................................................................................9

            a.  Avadel's application must include proposed labeling for IH which would become part of the labeling for Lumryz.................10

            b.  Marketing and selling Lumryz with Avadel's revised labeling will induce physicians and patients to use Lumryz to treat IH ............................................................................11

            c.  Adding IH to Lumryz's label will increase insurance coverage ............................................................................13

        4.  Avadel admits FDA approval will result in violation of the injunction ..................................................................................................14

    B.  The *eBay* Factors Support This Court Enjoining Avadel From Requesting FDA Approval For Lumryz To Treat Idiopathic Hypersomnia..........................15

        1.  Avadel's request for approval of Lumryz to treat IH will cause Jazz irreparable harm ..........................................................................15

            a.  Jazz's will lose market share to Avadel........................................16

            b.  Jazz will suffer price erosion .......................................................17

            c.  Jazz will suffer reputational damage.............................................18

        2.  Monetary remedies will not adequately compensate Jazz .........................19

        3.  The balance of equities favors Jazz ..........................................................19

        4.  The Injunction Would Not Disserve The Public Interest...........................20

IV.  CONCLUSION.......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed Cir. 2017)........................................................................20

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
    695 F.3d 1370 (Fed. Cir. 2012)........................................................................15

*Ben Venue Lab'ys, Inc. v. Novartis Pharm. Corp.*,
    146 F. Supp. 2d 572 (D.N.J. 2001) .....................................................................9

*Braintree Lab'ys. v. Breckenridge Pharm., Inc.*,
    688 F. App'x 905 (Fed. Cir. May 5, 2017) ...........................................................13

*Brooktrout, Inc. v. Eicon Networks Corp.*,
    No. 03-59, 2005 WL 8160605 (E.D. Tex. Jul. 25, 2005) ....................................5, 11

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013)........................................................................18

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*,
    7 F.4th 1320 (Fed. Cir. 2021) ...................................................................6, 9, 13

*Glob. Traffic Techs. LLC v. Tomar Elecs., Inc.*,
    No. 05-756, 2009 WL 10678424 (D. Minn. Jan. 22, 2009)......................5, 7, 17, 18

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
    136 F.4th 1075 (Fed. Cir. 2025) ............................................2, 3, 4, 6, 7, 8, 16

*Johns Hopkins Univ. v. CellPro, Inc.*,
    152 F.3d 1342 (Fed. Cir. 1998)......................................................................3, 4

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993)...................................................................4, 14, 15

*Kaspar Wire Works, Inc. v. K-Jack Eng'g Co.*,
    No. 95-1095, 1995 WL 662674 (Fed. Cir. Nov. 9, 1995) ..................................4, 15

*Nat'l Instruments Corp. v. Mathworks, Inc.*,
    113 F. App'x. 895 (Fed. Cir. 2004) .....................................................................4

*Natera, Inc. v. ArcherDx, Inc.*,
    No. 20-125, 2023 WL 9103876 (D. Del. Dec. 1, 2023) ........................................19

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
  106 F.4th 1369 (Fed. Cir. 2024) .......................................................................20

*Novozymes A/S v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007) ..................................................................19

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
  237 F.3d 1359 (Fed. Cir. 2001) .........................................................................18

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) .........................................................................19

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.*,
  821 F. Supp. 2d 681,694 (D.N.J. 2011), *affd and remanded sub nom. Sanofi-
  Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA*, 748 F.3d 1354
  (Fed. Cir. 2014) .................................................................................................16

*Sanofi-Synthelabo v. Apotex, Inc.*,
  470 F.3d 1368 (Fed. Cir. 2006) ...................................................................17, 20

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
  466 F. Supp. 2d 978 (W.D. Tenn. 2006) ........................................................5, 20

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) .............................................................................4

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984) .........................................................4, 5, 15, 20

*United States v. Loew's, Inc.*,
  371 U.S. 38 (1962) ...............................................................................................4

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018) ...........................................................................9

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
  842 F.2d 1275 (Fed. Cir. 1988) .........................................................................15

## Rules / Statutes

21 C.F.R. 201.100(d) ...............................................................................................12

21 C.F.R. § 201.56(b)(1)(iii)....................................................................................10

21 C.F.R. § 201.56(c)(1)...........................................................................................10

21 C.F.R. § 201.56(d)(1)...........................................................................................10

21 C.F.R. § 201.57 ...................................................................................................................11

21 C.F.R. § 201.57(a) .............................................................................................................10

21 C.F.R. § 201.57(b) .............................................................................................................10

21 C.F.R. § 201.57(c) .............................................................................................................10

21 C.F.R. § 201.57(c)(15) .......................................................................................................11

21 C.F.R. § 314.70(a)(4) .........................................................................................................12

21 C.F.R. § 314.70(b)(2)(v) ....................................................................................................10

21 CFR 201.56 ........................................................................................................................11

21 CFR 314.81(b)(3)(i) ...........................................................................................................12

21 U.S.C. § 355(b)(1)(A)(vi) ..................................................................................................10

21 U.S.C. § 355(r)(1) ..............................................................................................................12

21 U.S.C. § 355(r)(3) ..............................................................................................................12

35 U.S.C. § 271(a) ....................................................................................................................3

35 U.S.C. § 283 .........................................................................................................................4

## I.    INTRODUCTION

The injunction is back on remand because Avadel volleyed a plethora of new objections to it for the first time on appeal.  The injunction preventing Avadel from marketing, making, using, or selling Lumryz for the treatment of idiopathic hypersomnia ("IH") through the February 18, 2036 expiration of U.S. Patent No. 11,147,782 (the "'782 patent") remains.  The issue now before this Court is whether it should again enjoin Avadel from seeking approval for IH before February 19, 2036 to prevent Avadel from violating the injunction.  The factual record, not developed for the Federal Circuit because Avadel never raised the issue below, confirms a causal nexus exists between Avadel seeking approval for IH and the harm to Jazz.  Enjoining Avadel from seeking approval is necessary to give effect to the Court's injunction, and Avadel must ensure it does not receive approval for IH during the term of the injunction.

Avadel has indicated its request to the FDA for IH approval is imminent.  Once Avadel requests approval, nothing stops the FDA, a non-party to this action that cannot be enjoined in this case, from approving Avadel's request (which Avadel has represented will happen swiftly).  Indeed, despite the Federal Circuit positing that Avadel may not pursue its IH indication for financial reasons or lack of success in its studies, Avadel has repeatedly publicly stated that it is rapidly pursuing this multi-billion-dollar opportunity and that its clinical study is on track.  It did so in a statement as recently as May 7, 2025, after the Federal Circuit issued its opinion.

Because FDA approval would require Avadel to add the IH indication to the Lumryz label, FDA approval of Lumryz to treat IH inevitably would lead to the sale and use of Lumryz to treat IH, expanding the scope of Avadel's infringement and causing further irreparable harm to Jazz, whose Xywav® product is the only approved product for the treatment of IH.  Such labeling—long considered a form of marketing that will induce physicians to infringe—would tell prescribers and patients Lumryz is safe and effective for IH.  It also would result in insurance coverage for IH,

1

which would greatly increase its infringing use.  Such harm cannot be compensated monetarily.

Because Avadel cannot market, make, use, or sell Lumryz for IH, it will suffer no hardship from

the requested injunction, which would only require that Avadel ensure that it does not receive

approval for IH before the '782 patent expires.  For the same reason, the proposed injunction will

not harm the public interest.  In fact, on appeal, Avadel repeated its arguments against the

remaining *eBay* factors, and the Federal Circuit "considered [those] arguments and [found] them

unpersuasive." *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, 136 F.4th 1075, 1089 (Fed. Cir.

2025) ("CAFC Op.").  The Court should grant the relief requested herein.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Prior to trial, Avadel stipulated to infringement of claim 24 of the '782 patent.  D.I. 550.[1]

After a five-day trial, the jury rejected Avadel's invalidity challenges.  D.I. 579 at 8-11.  Jazz

requested a limited permanent injunction and an ongoing royalty (D.I. 586-589, 610-612), which

Avadel opposed (D.I. 601-609).  On August 27, 2024, this Court granted-in-part a limited

permanent injunction and enjoined Avadel from "seeking approval from the [FDA] and marketing

Lumryz for the treatment of IH" and "from infringing in any way Claim 24 of the '782 patent, by

making, using, or selling Lumryz or any product not more than colorably different from Lumryz,

through and including the expiration date of the '782 patent."  D.I. 666 at 2-3.  The Court also

issued factual findings and analysis supporting its conclusions.  D.I. 665.

Avadel appealed the injunction order the next day (D.I. 667), and requested an emergency

stay of the injunction on September 3, 2024 (D.I. 670).  This Court issued an order denying the

stay and clarifying the scope of the injunction (D.I. 710), which Avadel also appealed (D.I. 712).

The stay order clarified that "while the Order enjoins Avadel from seeking FDA approval for IH,

---

[1]  All "D.I." references refer to docket entries in C.A. No. 21-691 unless otherwise identified.

the Order does not enjoin Avadel from *submitting information or results* from ongoing clinical studies to the FDA." D.I. 710 at 4 (emphasis in original). The Federal Circuit issued a stay only with respect to "initiating new clinical trials or studies." D.I. 714 at 3.

The Federal Circuit reversed-in-part (as related to clinical trials and the open-label extension) and vacated-in-part the injunction and remanded to this Court to make additional factual findings and determine whether enjoining Avadel from requesting FDA approval for an IH indication is necessary to prevent infringement and to re-address the *eBay* factors accordingly. CAFC Op. at 1088-89. The Federal Circuit found factual support for, and did not disturb, the portion of the injunction preventing Avadel from marketing, making, using, or selling Lumryz for IH through expiration of the '782 patent. *Id.* at 1089; D.I. 733 at 1.

## III. THE COURT SHOULD ENJOIN AVADEL FROM REQUESTING FDA APPROVAL FOR A LUMRYZ IDIOPATHIC HYPERSOMNIA INDICATION

An injunction preventing Avadel from seeking FDA approval for IH is "necessary to prevent future infringement" in the IH population. CAFC Op. at 1089; *see also Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1367 (Fed. Cir. 1998) (explaining an injunction may reach non-infringing activities, where "[i]t is necessary ... that the injunction prevent infringement" of a patent). The Federal Circuit held that "the submission of an application to the FDA is not infringement under § 271(a)" and "is not an activity that triggers the safe harbor." CAFC Op. at 1086. But "it was not improper for [this] court to consider whether enjoining Lumryz from engaging in that activity was warranted based on a full consideration of the *eBay* factors" if enjoining that activity is "necessary to prevent infringement" and there exists a "causal nexus" between Jazz's irreparable harm and Avadel requesting IH approval. *Id.* at 1088-89 (internal citations omitted). As explained herein, an injunction preventing Avadel from requesting FDA approval for IH is necessary to prevent the harms this Court has recognized Jazz would suffer if

3

Lumryz is marketed, made, used, or sold for IH prior to the expiration of the '782 patent. The Federal Circuit already considered and found unpersuasive Avadel's other *eBay* factor arguments (*id.* at 1089); those factors, thus, too support enjoining Avadel from requesting IH approval.

### A. Enjoining Avadel From Requesting FDA Approval For IH Is Necessary To Prevent Currently Enjoined Infringement And Irreparable Harm To Jazz

Courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. This Court possesses "broad discretion to determine how best to enforce its injunctive decrees." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881 (Fed. Cir. 2011).

A court granting an injunction may "not properly deny the one element of such relief that [would be] necessary to make it effective." *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1564 (Fed. Cir. 1984); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 777 (Fed. Cir. 1993) ("The new injunction may enjoin Flakt's acts which constitute direct, induced or contributory infringement during the term of the patent . . . [as well as such] additional conditions [as] are necessary to ensure that Flakt does not enable direct infringement [by others]."); *Kaspar Wire Works, Inc. v. K-Jack Eng'g Co.*, No. 95-1095, 1995 WL 662674, at *3 (Fed. Cir. Nov. 9, 1995) (rejecting argument that "district court may do no more than is strictly necessary to prevent further acts of direct infringement by the enjoined party"). To ensure that an injunction is effectual, "otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined." *United States v. Loew's, Inc.*, 371 U.S. 38, 53 (1962).

In the patent context, an injunction may reach activities that "do not themselves constitute infringement," so long as it is necessary to prevent infringement. *Johns Hopkins Univ.*, 152 F.3d at 1366; *Nat'l Instruments Corp. v. Mathworks, Inc.*, 113 F. App'x. 895, 898-99 (Fed. Cir. 2004) (affirming injunction barring all sales of accused product where "[t]he trial court was cognizant

[that there may be non-infringing uses] and nonetheless determined that 'the scope of the injunction remains that which is necessary to deter future infringement'") (cite omitted); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 988 (W.D. Tenn. 2006) ("A district court . . . can enjoin activities that 'do not themselves constitute infringement' if necessary to prevent infringement."); *Brooktrout, Inc. v. Eicon Networks Corp.*, No. 03-59, 2005 WL 8160605, at *4 (E.D. Tex. Jul. 25, 2005) ("A court is justified in issuing such relief [of enjoining non-infringing conduct] if the court is persuaded that such a ban is necessary to stop future infringement even though the order has the ancillary effect of preventing some lawful uses."); *Glob. Traffic Techs. LLC v. Tomar Elecs., Inc.*, No. 05-756, 2009 WL 10678424, at *14 (D. Minn. Jan. 22, 2009) (enjoining accused product despite non-infringing uses being "theoretically possible" because "[t]o do otherwise would leave [patentee] exposed to a large risk of future infringement by [infringer] and not give adequate enforcement to [patentee's] patent rights").

Here, Avadel's appeal did not disturb the portion of the injunction that prevents Avadel from marketing, making, using, or selling Lumryz for IH through the expiration of the '782 patent. D.I. 733 at 1. This Court is well within its discretion to narrowly enjoin Avadel from seeking FDA approval for that indication through patent expiration, because doing so is "necessary to make [the injunction] effective." *Trans-World*, 750 F.2d at 1564.

The record evidence demonstrates the following four facts: (1) unless Avadel is enjoined from requesting FDA approval to treat IH, once Avadel's trial is completed next year, Avadel will submit an application for IH; (2) Avadel expects the application will be swiftly approved; (3) an IH indication will be included on Lumryz's label and Avadel will be marketing for IH, inducing physicians to prescribe and patients to use Lumryz for IH in violation of the injunction; and (4) Avadel admits that FDA approval will result in the current injunction being violated. *See*

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1333-34 (Fed. Cir. 2021) ("Our precedent has consistently held that, when a product is sold with an infringing label or an infringing instruction manual, such a label is evidence of intent to induce infringement.").

### 1.    Avadel will submit an application for an IH indication

The Federal Circuit's suggestion that "Avadel may decide the financial investment in pursuing the approval does not comport with its business prospects," (CAFC Op. at 1089), lacks any support. Avadel's public statements and actions prove otherwise.

One of Avadel's primary goals is to expand Lumryz's eligible patient population, which Avadel has publicly planned to do through additional indications since Lumryz launched in June 2023. PTX300.112-113. In the months leading up to and during trial, Avadel's CEO Greg Divis reiterated that Avadel would be seeking an IH indication. PTX1899.8; D.I. 596, 2/27 Tr. (Divis) at 519-520, 529. And the day the jury found Avadel infringed a valid patent, knowing Avadel could still be enjoined from further infringement, Mr. Divis stated in an Avadel earnings call that "[t]he next growth opportunity we're pursuing is LUMRYZ for the treatment of idiopathic hypersomnia or IH" and that Avadel was "currently well advanced in the planning stages to initiate a multicenter, randomized controlled trial for IH in the second half of this calendar year." Ex. 2 at 3; *see also* D.I. 606, Divis Decl. ¶ 12-13. Since then, Avadel has steadily moved toward completion of its trial and has never wavered in its intention to submit an application. Ex. 3 at 5, 17 (post-injunction hearing, pre-injunction decision); Ex. 4 at 4 (post-injunction decision, pre-appellate decision); Ex. 5 (post-appellate decision); Ex. 6 at 8:5-13 (post-appellate decision). Avadel did not even pause its clinical trial efforts after representing to the Court at the June 2024 injunction hearing that it would not move forward if enjoined. Ex. 7 at 64:15-21; 86:1-8; Ex. 8. Avadel launched its clinical trial weeks later—prior to the Court's injunction decision. Ex. 8.

6

In May 2025, following this remand, Avadel repeatedly stated that it is a foregone conclusion that it will seek to expand infringement of Jazz's patent with Lumryz. Avadel said it "expect[s] to complete enrollment in the trial before the end of 2025 and are targeting top line data in the first part of 2026, followed by an NDA filing thereafter." Ex. 6 at 8:10-13. Far from abandoning its efforts, which the Federal Circuit suggested, Avadel stated "it's very clear and very straightforward that [the Federal Circuit's] *vacatur gives us a pathway to file and secure and seek FDA approval*," *id.* at 28:19-23 (emphasis added), absent an injunction from this Court. Avadel understands that as long as it can seek FDA approval, the current injunction will not prevent it from increasing and eventually profiting from infringing IH sales. *See Glob. Traffic*, 2009 WL 10678424, at *13 (enjoining all sales of infringing product despite non-infringing uses where infringer's "only apparent reason to sell code-capable emitters is for eventual use in code-capable systems, which would itself constitute an act [of] infringement").

Avadel's investment in IH and continued belief in the significant financial opportunity IH presents show that it will not reverse course and "decide the financial investment in pursuing the approval does not comport with its business prospects," CAFC Op. at 1089, but rather that it is "*relentlessly* committed to" receiving IH approval. Ex. 5 (emphasis added). In sum, Avadel sees IH as crucial to its success. Thus, even while faced with a potential injunction, Avadel made significant investments in an IH indication, including ███████████████████████████████ ████████████ D.I. 606, Divis Decl. ¶ 12.

Avadel expects a significant return on this investment. "Avadel's interest in the IH market stems from its recognition that the market holds 'a lot of opportunity' because 'there's a robust patient population . . . with only one currently FDA approved treatment, [Xywav].'" D.I. 665 at 22 (quoting D.I. 591-1, Exhibit 2 at 23). Avadel estimates the number of patients with IH at 40,000

7

to 42,000.  Ex. 10 at 21, 23; Ex. 6 at 8:14-20; Ex. 4 at 4; Ex. 11 at 6.  Avadel also covets the IH market because of its nascency.  *See* D.I. 665 at 22 ("Indeed, with FDA approval, Lumryz will compete head-to-head against Xywav in a newly-developing market.").  Xywav remains the only FDA-approved treatment for IH.  D.I. 665 at 22; Ex. 6 at 8:14-18.  And Avadel estimates that 90% of patients diagnosed with IH are not yet treated.  Ex. 10 at 21.  Avadel stresses that this is "a significant additional unrealized market opportunity" with "clear market potential" that is "highly untapped and ripe."  Ex. 6 at 8:14-20, 9:8-11, 21:11-15.

Avadel's continued focus on the "significant additional unrealized market opportunity" IH presents refutes the Federal Circuit's concern that "Avadel may decide the financial investment in pursuing the approval does not comport with its business prospects."  CAFC Op. at 1089.  Instead, Avadel views expanding the eligible Lumryz population as "key to Avadel's future growth and value creation."  Ex. 6 at 8:5-7.

### 2.    Avadel expects the FDA to approve its request for Lumryz to treat IH

Avadel's public statements and general course of FDA conduct demonstrate that, from Avadel's point of view, the Federal Circuit's suggestion that Avadel's "[c]linical trials may fail" to result in FDA approval, CAFC Op. at 1089, lacks any factual support.

Avadel expects to seek approval for IH in early 2026 after completion of its phase 3 clinical trial.  Ex. 6 at 8:5-13.  On July 31, 2024, Avadel announced it had dosed the first patient in its phase 3 IH trial, which it calls "REVITALYZ."  Ex. 8.  On May 7, 2025, Avadel stated that it "expect[s] to complete enrollment in the trial before the end of 2025 and [is] targeting top line data in the first part of 2026, followed by an NDA filing thereafter."  Ex. 6 at 8:5-13.

Avadel expects this single phase 3 study is sufficient for FDA approval, pointing to Jazz's single study for Xywav in treating patients with IH to support Jazz's application.  Ex. 3 at 17; Exs. 12-13.  Avadel's own expert, Dr. Stern, opined that one phase 3 trial will suffice because he expects

Lumryz to be similarly efficacious to Xywav:

> [T]here is no reason to think that sodium oxybate options, including Xyrem and Lumryz, would be any less effective than mixed-salts Xywav for treating idiopathic hypersomnia. In fact, sodium oxybate is noted in 2017 French guidelines to be potentially effective for the treatment of EDS and sleep inertia in idiopathic hypersomnia and is conditionally recommended for the treatment of idiopathic hypersomnia in the 2021 American Academy of Sleep Medicine guidelines. Although there have been no phase III randomized controlled trials, multiple published studies have evaluated sodium oxybate in idiopathic hypersomnia and shown that sodium oxybate therapy was associated with improved symptoms in IH patients.

D.I. 607, Stern Decl. ¶ 15.

Once Avadel's clinical trial is completed, Avadel expects the FDA to take about ten months to review Avadel's application. D.I. 672, Gudeman Decl. ¶ 10. By Avadel's timeline, the FDA would find Avadel approvable for IH by late 2026 or early 2027.

This Court cannot enjoin the FDA, a non-party to this litigation, from approving Avadel's IH application. *Ben Venue Lab'ys, Inc. v. Novartis Pharm. Corp.*, 146 F. Supp. 2d 572, 584 n.10 (D.N.J. 2001) ("Since the FDA is not a party to this suit, the Court lacks any jurisdiction over it."). Therefore, absent an injunction, the FDA will be free to approve once its review is complete. It is thus necessary to enjoin Avadel from requesting FDA approval to prevent Avadel from receiving approval for IH and expanding the scope of its already-enjoined infringement.

### 3.    Upon approval for IH, the Lumryz label will include the IH indication, resulting in Avadel marketing and selling Lumryz for IH

As explained below, once Lumryz is approved to treat IH, the law requires that its labeling include that approved indication and be made public. At that point, Avadel will be marketing and selling Lumryz for IH, inducing physicians to prescribe and patients to use Lumryz for IH in violation of the injunction. *See GlaxoSmithKline LLC*, 7 F.4th 1320 at 1333-34; *see also Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) ("The contents of the label itself may permit the inference of specific intent to encourage, recommend, or promote

infringement.").[2]

### a. Avadel's application must include proposed labeling for IH which would become part of the labeling for Lumryz

The FDA's labeling requirements ensure that any approval would result in Avadel inducing infringement. The FDA required Jazz to "submit proposed prescribing information (PI) [or labeling] that conforms to the content and format regulations." Ex. 14 at 9. When the FDA approved Jazz's IH application, it specifically referred to the proposed labeling. Ex. 15 at 1 (approving application "for use as recommended in the enclosed agreed-upon labeling"). The FDA informed Jazz that the final labeling "will be accessible from publicly available labeling repositories" and "request[ed] that the labeling approved today be available on [Jazz's] website within 10 days." Ex. 15 at 2; Cortez Decl. at ¶ 52. The same will apply to Avadel's application.

Like Jazz, Avadel must submit proposed labeling with its application that includes the new IH indication and safety and efficacy information from Avadel's IH trial. *See* 21 C.F.R. § 314.70(b)(2)(v) (labeling changes requiring supplemental NDA submission), § 201.56(c)(1) ("proposed conforming labeling must be submitted as part of the application"); 21 U.S.C. § 355(b)(1)(A)(vi) (requiring "specimens of the labeling proposed to be used for such drug"); Cortez Decl. at ¶¶ 13-15, 30-34. Avadel's proposed labeling "*must* contain the specific information required under § 201.57(a), (b), and (c)." 21 C.F.R. § 201.56(d)(1) (emphasis added); § 201.56(b)(1)(iii) ("Prescription drug products for which an NDA . . . or efficacy supplement is submitted" are "subject to the labeling requirements in paragraph (d) of this section and

---

[2] The '782 patent claims a unit dosage form. But Avadel is enjoined from, "making, using, or selling Lumryz" for uses other than treating narcolepsy patients. D.I. 666 at 2. Jazz is not required to prove inducement by Avadel. Jazz merely cites the above cases for the well-settled principle that disseminating drug product labeling instructing a specific use means that the company marketing that drug product is liable for causing infringement of that use.

§ 201.57."); Cortez Decl. at ¶¶ 16, 41-46.  Section 201.57(c)(2) requires Avadel to include information regarding the indications and usage of Lumryz in section one of its labeling, and Section 201.57(c)(15) requires Avadel to "discuss those clinical studies that facilitate an understanding of how to use the drug safely and effectively" including "the studies that support effectiveness for the labeled indication(s)."  *See also* Cortez Decl. at ¶¶ 41-46.  The FDA agrees that "[t]o comply with the general labeling requirements in 21 CFR 201.56 and 201.57, the INDICATIONS AND USAGE section *must . . . clearly convey the use(s) for which the drug has been shown to be safe and effective*."  U.S. Food and Drug Administration, Indications and Usage Section of Labeling for Human Prescription Drug and Biological Products – Content and Format, Draft    Guidance    for    Industry    (July    2018),    at 2    (available    at https://www.fda.gov/media/114443/download).  Thus, with its application, Avadel must propose labeling with an IH indication and information on efficacy and safety for IH.

Once approved, the proposed labeling will become the approved labeling for Lumryz.  Ex. 15 at 1; Cortez Decl. at ¶¶ 29-34.  It is thus necessary to enjoin Avadel from requesting FDA approval to prevent an IH indication on Avadel's label.  *See Brooktrout*, 2005 WL 8160605, at *6 ("enjoin[ing] Eicon from publishing any document to be distributed in the United States which contains any instructions to users explaining how to configure the Eicon Diva Server in a[n infringing manner]").

### b.    Marketing and selling Lumryz with Avadel's revised labeling will induce physicians and patients to use Lumryz to treat IH

Once IH is on the Lumryz label, Avadel will be marketing, making, using, and selling Lumryz for IH (despite the Court's injunction).  In fact, Avadel will be inducing physicians to prescribe and patients to use Lumryz for IH.  Lumryz's new label will be published by the FDA, listed on Avadel's website, and included with Lumryz advertisements.  Lumryz's IH approval will

11

be publicized to investors, to physicians, and to pharmacy benefit managers ("PBMs"). These activities all result in the same irreparable harm this Court already found Jazz would suffer once Avadel commercializes Lumryz for IH. D.I. 665 at 3-11, 22-24; *see also infra* at 15-18.

The FDA *must* post Avadel's approved labeling on its website so that healthcare providers and patients may access it. 21 U.S.C. § 355(r)(3) (requiring the FDA to "post on [its] Internet Web site . . . the approved professional labeling and any required patient labeling of a drug approved under this section" within 21 days of approval "including in a supplemental application with respect to a labeling change"); Cortez Decl. at ¶¶ 47-51.

Avadel must also "revise all promotional labeling and advertising to make it consistent with any labeling change." 21 C.F.R. § 314.70(a)(4); Cortez Decl. at ¶ 35-40. Therefore, Avadel must include the IH indication in the labeling when it distributes Lumryz. Avadel's new labeling will be included with Lumryz marketing materials and will be available to healthcare providers. Brief Summary and Adequate Directions for Use: Disclosing Risk Information in Consumer-Directed Print Advertisements and Promotional Labeling for Prescription Drugs, Draft Guidance for Industry (August 2015), at 3 (available at https://www.fda.gov/media/70768/download) ("Generally, the requirements in 21 C.F.R. 201.100(d) have been fulfilled by including the full FDA-approved package insert (PI) with promotional labeling materials."); *see also* 21 CFR 314.81(b)(3)(i); Cortez Decl. at ¶ 36. These requirements are intended to disseminate the information in Avadel's approved labeling to prescribers and patients. *See e.g.*, 21 U.S.C. § 355(r)(1) (requiring creation of website database for labels to "improve the transparency of information about drugs and *allow patients and health care providers better access to information about drugs*") (emphasis added). Mandatory distribution of Lumryz's label with an IH indication will wholly negate this Court's injunction.

Federal Circuit precedent holds a label "instructing how to engage in an infringing use[] show[s] an affirmative intent that the product be used to infringe." *GlaxoSmithKline LLC*, 7 F.4th at 1333-34; *see also Braintree Lab'ys. v. Breckenridge Pharm., Inc.*, 688 F. App'x 905, 910 (Fed. Cir. May 5, 2017) (Because the label "instructs how to engage in an infringing use, it shows an affirmative intent that the product be used to infringe." (cleaned up)).  Inclusion of IH on Lumryz's label would demonstrate Avadel's intent for physicians to prescribe and patients to use Lumryz for IH.

Avadel's intent is further demonstrated by its continued public statements regarding IH since being enjoined.  Avadel keeps investors apprised of its clinical trial, its investment in IH, and the size of the IH "opportunity."  *See supra* at 6-8.  Avadel also continues to speak "directly [with] clinicians and leading key opinion leaders" regarding "the potential prospects of LUMRYZ and IH."  Ex. 11 at 6; Ex. 16 at 2; Ex. 4 at 4.  And after approval, Avadel intends to disseminate its clinical trial data and IH indication "to the public at large."  No. 24-2274, D.I. 42 at 7, 31 (Fed. Cir. Nov. 13, 2024).  Avadel's public statements confirm its intent for healthcare providers to prescribe, patients to use, and Avadel to sell Lumryz for IH once approved.

Once approved, physicians will prescribe Lumryz for IH.  Bogan Declaration at ¶¶ 15, 29-42.  Dr. Lavender, an Avadel declarant for its opposition to Jazz's original injunction, stated that "[a]s soon as [Lumryz] is approved for IH, I will offer it to my IH patients for whom it is appropriate."  D.I. 608, Lavender Decl. ¶¶ 11, 19.  Even without that approval, Mr. Divis said "doctors are currently permitted to . . . prescribe LUMRYZ off-label for use in IH."  D.I. 606, Divis Decl. at ¶ 15.  Avadel has recorded off-label sales.  D.I. 671 at 15 (twenty IH patients taking in September 2024).  Any non-narcolepsy sales with the current injunction are a violation.

      **c.**      **Adding IH to Lumryz's label will increase insurance coverage**

Before the injunction, "the number of IH patients taking LUMRYZ off-label for IH [wa]s low because insurance coverage [wa]s not available for off-label use of LUMRYZ." D.I. 606, Divis Decl. at ¶ 15. But if Lumryz is approved for IH, PBMs would cover it. Avadel says, "[o]nce [Avadel] get[s] approval, there should be insurance coverage for LUMRYZ for IH, and that is when [Avadel] expects to see more patients taking LUMRYZ for IH." *Id.*; *see also* Ex. 9 at 2 ("Supplemental indication approval by the FDA is also critical for ensuring insurance coverage."). Avadel intends to profit from IH sales: to obtain approval for IH, expand coverage, then purportedly passively allow doctors "to exercise their medical judgment and prescribe LUMRYZ . . . for use in IH." D.I. 606, Divis Decl. at ¶ 15.

Avadel has already argued that the current injunction "does not and cannot control off-label use because *Avadel* does not and cannot control off-label use," and "[t]o the extent a doctor chooses to prescribe a medication off-label, that is a choice between the physician and patient and is not subject to this Court's injunction." D.I. 671 at 15 (emphasis in original). But the infringing *making* and *sale* by Avadel for uses other than treatment of narcolepsy is a violation of the current injunction regardless of whether Avadel is actively promoting Lumryz for IH. And, Avadel obtaining FDA approval before the '782 patent expires will induce direct infringement by physicians and patients in further violation of the injunction and the '782 patent. This Court should, therefore, enter the requested injunction. *Joy Techs.*, 6 F.3d at 777 (approving injunction "necessary to ensure that Flakt does not enable direct infringement [by others]").

### 4.    Avadel admits FDA approval will result in violation of the injunction

Avadel stated during oral argument at the Federal Circuit that once Avadel receives IH approval and IH is on Lumryz's label, the parties will "end up back in front of the district court, and we would sort it out there" and that "we would have to litigate it." Ex. 17 at 30:25-32:13. But there is nothing left to litigate. Avadel stipulated that Lumryz infringes claim 24 of the '782 patent.

D.I. 550. That claim is valid. D.I. 579. And Avadel is enjoined from marketing, making, using, or selling Lumryz for IH. D.I. 666 at 2-3; D.I. 733 at 1. Avadel has no reason to request FDA approval ten years in advance of when it can sell Lumryz for IH.

Any protest from Avadel that it will not actively market or sell for IH if approved rings hollow. The above analysis demonstrates that such marketing and sales for IH—resulting in Jazz's irreparable harm—inevitably flows from FDA approval of Lumryz for IH. For Avadel to succeed on a no-risk-of-future-infringement argument, it must present "*evidence [that] is very persuasive* that future infringement will not take place." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) (emphasis added). Avadel cannot present any such evidence. And as explained above, Avadel is required by law to market Lumryz under its approved labeling which will also be published by FDA and relied upon by PBMs, prescribers, and patients. At that point, the Court could not remedy the irreparable harm done to Jazz.

The Court must not "deny the one element of such relief that [would be] necessary to make [the injunction] effective." *Trans-World*, 750 F.2d at 1564. Allowing Avadel to seek approval before February 19, 2036 would render the current injunction ineffective; enjoining Avadel from seeking approval is "necessary to ensure that [Avadel] does not enable direct infringement." *Joy Techs.*, 6 F.3d at 777; *Kaspar Wire Works*, 1995 WL 662674, at *3.

### B. The *eBay* Factors Support This Court Enjoining Avadel From Requesting FDA Approval For Lumryz To Treat Idiopathic Hypersomnia

#### 1. Avadel's request for approval of Lumryz to treat IH will cause Jazz irreparable harm

A patentee must prove "1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co. Ltd.,* 695 F.3d 1370, 1374 (Fed. Cir. 2012). This Court previously "agree[d] that Jazz would suffer irreparable injury if Avadel is not enjoined from seeking FDA

approval and marketing Lumryz for IH." D.I. 665 at 22. The Federal Circuit found no fault in this Court's findings that "'Lumryz's entrance into the IH market would undoubtedly cause Jazz to suffer significant injury'" because "[u]nlike the narcolepsy indication, . . . 'Jazz's Xywav is the only FDA-approved treatment for IH,' and therefore, 'Avadel's entrance into the market would strip Jazz of a unique selling point critical to growing its reputation and goodwill.'" CAFC Op. at 1088-89 (quoting D.I. 655 at 22-23). It merely found them insufficient, on the record at the Federal Circuit, to conclude that "enjoining Avadel from applying for FDA approval is necessary to prevent future infringement." CAFC Op. at 1089. But as explained above, a strong causal nexus exists between the irreparable harm this Court found Jazz will suffer and Avadel requesting approval for IH. Proof of that causal nexus is alone sufficient to enjoin Avadel from requesting approval based on the Court's initial *eBay* analysis. But as further explained below, Avadel's request for an IH indication will irreparably harm Jazz.

### a.    Jazz's will lose market share to Avadel

Avadel's request for approval for Lumryz to treat IH will inevitably result in Jazz losing market share to Avadel, a direct competitor, which this Court has acknowledged constitutes irreparable harm. D.I. 665 at 22-24. As explained above, Avadel's request for FDA approval will necessarily and inevitably result in the sale of Lumryz for IH. *See supra* at 4-15. Because Jazz and Avadel would be "two head-to-head competitors in the [IH] marketplace; every sale of [Avadel's Lumryz] is a lost sale by [Jazz]." *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.*, 821 F. Supp. 2d 681,694 (D.N.J. 2011), *affd and remanded sub nom. Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA*, 748 F.3d 1354 (Fed. Cir. 2014).

Xywav IH sales continue to increase at a high rate—a 41% increase from 2023 to 2024. Ex. 18 at 88. But many IH patients have not yet been treated because it is still a nascent market. Thus, Avadel continues to recognize the significant market opportunity. *See supra* at 6-8.

16

Lumryz's approval and subsequent prescriptions by healthcare providers would immediately cut Jazz's market share and irreparably harm Jazz. As previously held, "an encroachment by Avadel at such a 'crucial inflection point' in the development of the IH market would harm Jazz by allowing Avadel to 'capture and define the market with pirated technology.'" D.I. 665 at 23 (citation omitted). "Because Xywav is the only FDA approved treatment for IH, Lumryz's entrance into the IH market would undoubtedly cause Jazz to suffer significant injury." *Id.* at 22.

Indeed, Avadel has spent its commercial launch of Lumryz teaching prescribers to switch patients from Jazz products to Lumryz. *See* D.I. 665 at 3-4. Avadel's label even includes instructions for prescribers to switch patients from Jazz's products to Lumryz. Ex. 19 at § 2.4; Bogan Decl. at ¶¶ 21, 36. Avadel's narcolepsy commercial strategy and labeling instructions teaching prescribers to switch to Lumryz paired with an IH indication will thus inevitably result in prescribers switching patients taking Xywav for IH to Lumryz. Enjoining non-infringing conduct when necessary to prevent infringement is "especially" called for "where, as here, the infringer has taught the market how to infringe or facilitated infringement by end-users" and "the Court cannot trust the infringer not to infringe in the future." *Global Traffic Techs.*, 2009 WL 10678424 at *8. The Court should prevent the irreparable loss of market share.

### b.     Jazz will suffer price erosion

Avadel's request for IH approval will inevitably result in Jazz suffering further price erosion, which this Court held constituted irreparable harm. D.I. 665 at 4-5, 10-12, 23. ▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ D.I. 665 at 4 (quoting *Sanofi-Synthelabo v. Apotex,*

*Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2006)).  "[P]rice erosion and loss of market position [i]s likely" if Avadel receives approval for IH.  D.I. 655 at 23 (quoting *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,* 237 F.3d 1359, 1368 (Fed. Cir. 2001)).

Under the injunction, Avadel should not be negotiating with PBMs for additional coverage ████████████████████████████ due to an additional indication.  But Avadel believes that "[o]nce [Avadel] get[s] approval, there should be insurance coverage for LUMRYZ for IH."  D.I. 606, Divis Decl. at ¶ 15.  Just as with narcolepsy, this would be to Jazz's detriment.  Once Lumryz is IH-approved, that approval will be public.  *See supra* at 12-13.  ████████████

████████████████████████████████████████

████████████████████████████████████████

████████ The Court should prevent such irreparable price erosion.

### c.    Jazz will suffer reputational damage

Avadel's request for IH approval inevitably will result in Jazz suffering irreparable reputational harm.  Avadel receiving IH approval will "damage [Jazz's] ability to build its reputation as the exclusive market leader."  D.I. 665 at 22.  This Court found that "Xywav's title as the only FDA-approved treatment for IH 'is an intangible asset that is part of a company's reputation.'"  *Id.* at 23 (quoting *Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1345 (Fed. Cir. 2013)).  Harm to that reputation is irreparable.  *Id.* at 23-24.

As explained above, Avadel continues to tout "the potential prospects of LUMRYZ and IH" to investors, clinicians, and key opinion leaders.  Ex. 11 at 6; Ex. 16 at 2; Ex. 4 at 4; Ex. 6 at 8:21-24.  After approval, Avadel intends to advertise its trial data and IH approval "to the public at large."  No. 24-2274, D.I. 42 at 7, 11 (Fed. Cir. Nov. 13, 2024).  Such actions spread the word that Xywav is no longer "the only FDA-approved treatment for IH."  D.I. 665 at 23.  The Court should prevent this irreparable reputational harm.  This factor still weighs in Jazz's favor.

### 2.    Monetary remedies will not adequately compensate Jazz

"Jazz has satisfied its burden of showing that monetary remedies would not adequately compensate the harm caused by Lumryz's introduction into the market for IH." D.I. 665 at 24.  In its original injunction order, this Court found this factor satisfied by evidence of Jazz suffering price erosion, loss of market share to a "head-to-head competitor[]," and reputational harm from losing its exclusivity in the IH market.  *Id.* at 22-24 (quoting *Novozymes A/S v. Genencor Int'l, Inc.,* 474 F. Supp. 2d 592, 613 (D. Del. 2007)).   As explained above, each of these harms necessarily will result from Avadel's request for FDA approval for an IH indication for Lumryz.  *Natera, Inc. v. ArcherDx, Inc.*, No. 20-125, 2023 WL 9103876, at *4 (D. Del. Dec. 1, 2023) ("[I]nadequacy of remedies available at law[] is nearly indistinguishable from irreparable injury.").  Therefore, this factor still weighs in favor of Jazz's requested injunction.

### 3.    The balance of equities favors Jazz

"The balance of the equities also tips in Jazz's favor."  D.I. 665 at 25.  Avadel is enjoined from marketing, making, using, or selling Lumryz until the '782 patent expires.  *Id.*; D.I. 733 at 1.  Avadel suffers no harm from enjoining an IH approval request until the '782 patent expires.  IH aside, Avadel "expects to generate sustainable positive cash flow in 2025" and make billions from narcolepsy sales alone. Ex. 1 at 5; D.I. 596, 2/27 Tr. (Divis) at 525-527; PTX1899.7.

As explained, Avadel requesting approval for IH will inevitably lead to Avadel marketing and selling Lumryz for IH, which will induce physicians and patients to infringe.  *See supra* at 4-15.  And the court previously found that "'requiring [Jazz] to compete against its own patented invention . . . places a substantial hardship on [Jazz],' particularly given that Lumryz would be the only other FDA-approved treatment for IH."  D.I. 665 at 25 (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011)) (alterations in original).  This factor thus still weighs in favor of Jazz's requested injunction.

### 4.    The Injunction Would Not Disserve The Public Interest

"In evaluating whether the public interest favors the grant of an injunction, the district court should focus on whether a critical public interest would be injured by the grant of injunctive relief." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1380 (Fed. Cir. 2024) (internal quotes and cite omitted). This Court already found "the public interest weighs in favor of enjoining Lumryz in the IH market" because Avadel could not rebut the "public interest in encouraging investment in drug development and protecting the exclusionary rights conveyed in valid pharmaceutical patents[ ]." D.I. 665 at 25-29 (quoting *Sanofi-Synthelabo,* 470 F.3d at 1383) (internal quotes omitted). Avadel still cannot offer any rebuttal. As explained above, the only way to successfully ensure Lumryz is enjoined from the IH market is to prevent Avadel from requesting approval for an IH indication. Avadel is already enjoined from marketing, making, using, or selling Lumryz for IH. The public is not disserved by this Court "ensur[ing] that the injunctive relief granted is effective." *Smith & Nephew*, 466 F.Supp.2d at 988.

"[T]he weight of the evidence shows that IH and narcolepsy are distinct conditions and that Xywav can—and very likely is—administered in a single dose to treat the symptoms of IH." D.I. 665 at 27-28. Avadel "has not [and cannot] show[] that Lumryz offers any other distinct benefits to patients with IH." *Id.* at 28. This request does not eliminate a choice of drugs, though that alone is insufficient "to disserve the public interest." *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1381 (Fed Cir. 2017). It simply provides Jazz "such relief that [would be] necessary to make [the current injunction] effective." *Trans-World*, 750 F.2d at 1564. Therefore, this factor still weighs in favor of enjoining Avadel from requesting approval of Lumryz to treat IH.

## IV.    CONCLUSION

For the reasons set forth above, Jazz respectfully requests the Court grant the limited permanent injunction requested herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

June 17, 2025

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiffs*
*Jazz Pharmaceuticals, Inc. and*
*Jazz Pharmaceuticals Ireland Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 17, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Michelle Chin, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>Ramya Sri Vallabhaneni, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Kelly Welsh, Esquire<br>Anna M. Rathbun, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

David F. Kowalski, Esquire                                          *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                           *VIA ELECTRONIC MAIL*
Rebecca E. Weires, Esquire
Adam R. Brausa, Esquire
Tannyr Pasvantis, Esquire
Umeet K. Sajjan, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Kira A. Davis, Esquire                                              *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Katherine E. McNutt, Esquire
Rose S. Lee, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Defendant*

Andrew T. Jones, Esquire                                            *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Defendant*

Scott F. Llewellyn, Esquire                                         *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
*Attorneys for Defendant*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

2